**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

|  |  |
|---|---|
| **CODEFINE INTERNATIONAL SA,** | |
| **Plaintiff,** | |
| **v.** | **4:25-CV-00128-P** |
| **SIMPLY SOUTHERN HOLDINGS, LLC,** | |
| **Defendant.** | |

## DEFENDANT'S CONSOLIDATED MOTION TO DISMISS AND

## OPPOSITION TO PLAINTIFF'S MOTION FOR ENTRY OF CONSENT JUDGMENT

## AND PERMANENT INJUNCTION

<u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

FACTS ................................................................................................................................... 2

ARGUMENT ........................................................................................................................ 7

   I.   Legal Standards ....................................................................................................... 8

   II.   Codefine's Motion and Claims are Barred by Res Judicata ........................................ 10

   III.   Subject Matter Jurisdiction is Lacking and This Case Should be Dismissed. ............... 12

     A.   The January 29 Order Indicates that Patent Claims Were Resolved. ......................... 12

     B.   The Parties Reached an Accord, Resolving the Patent Claims. ................................ 13

   IV.   Codefine Misconstrues the Settlement. ......................................................................... 17

   V.   Codefine's Motion Should be Denied on Equitable Principles ...................................... 19

CONCLUSION .................................................................................................................... 22

## **TABLE OF AUTHORITIES**

**Cases**

*Allen v. Vertafore, Inc.,* 28 F.4th 613 (5th Cir. 2022) .......................................................... 9

*Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533 (5th Cir. 2003) ........................................... 7, 18

*Ballew v. Cont'l Airlines, Inc.,* 668 F.3d 777 (5th Cir. 2012) ....................................................... 16

*Bell v. Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313 (5th Cir. 2022) ........................................ 9

*Brinsdon v. McAllen Independent School District*, 863 F.3d 338 (5th Cir. 2017)....................... 12

*Carpenter v. Twin City Fire Ins. Co.*, 2024 WL 455342 (N.D. Tex. Feb. 2, 2024) .................... 19

*Cerkezi v. City of Arlington*, 2024 WL 265873 (N.D. Tex. Jan. 24, 2024) ......................... 9

*Childers v. Pumping Systems, Inc.*, 968 F.2d 565 (5th Cir. 1992)................................................ 15

*Codefine Int'l SA v. Simply Southern Holdings, LLC*, No. 4:24-cv-00956-P (N.D. Tex. filed Oct.

    8, 2024, Final Judgment Dec. 4, 2024, and Order January 29, 2025) .... 1, 2, 4, 5, 10, 11, 13–15

*eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)............................................................. 19

*Green v. Forney Engineering Co.*, 589 F.2d 243 (5th Cir. 1979).................................................... 8

*Gunn v. Minton*, 568 U.S. 251 (2013).......................................................................................... 10

*Harjo v. Citizenship and Immigration Services*, 811 F.3d 1086 (9th Cir. 2016)......................... 16

*Hicks v. Transamerica Life Ins. Co.*, 2024 WL 1312500 (N.D. Tex. Mar. 19, 2024)................. 13

*In re Vitro Asset Corp.*, 539 B.R. 108 (N.D. Tex. 2015) ............................................................. 10

*Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22 (10th Cir. 1984) ...................................................... 7

*Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of America*, 439 Fed. Appx. 359 (5th Cir. 2011).. 9

*Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994) ....................................... 17

*Monk v. Huston*, 340 F.3d 279 (5th Cir. 2003) ........................................................................... 13

*Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398 (5th Cir. 2009) ................................................ 10

*Ramming v. United Stated*, 281 F.3d 158 (5th Cir. 2001) ............................................................ 12

*Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816 (5th Cir. 2003) ................ 19

*Schweiger v. USAA Fed. Sav. Bank*, 2017 WL 6503660 (W.D. Tex. Dec. 18, 2017) ................. 17

*Shemwell v. City of McKinney, Texas*, 63 F.4th 480 (5th Cir. 2023) ........................................... 12

*Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563 (5th Cir. 2021) .................................................. 9

*Williamson v. Tucker*, 645 F.2d 404 (5th Cir. 1981) ..................................................................... 8

*z4 Technologies, Inc. v. Microsoft Corp.*, 434 F.Supp.2d 437 (E.D. Tex. 2006) ........................ 20

## Statutes

28 U.S.C. § 1338 ........................................................................................................................... 10

28 U.S.C. § 1331 ........................................................................................................................... 10

## Other Authorities

Fed. R. Civ. P. 12(b)(1) ..................................................................................................... 2, 8, 12, 13

Fed. R. Civ. P. 12(b)(6) ..................................................................................................... 2, 9, 10, 12

18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4409 (3d ed. 2008)

............................................................................................................................................ 12

## **INTRODUCTION**

Pursuant to the Court's Order (ECF No. 15) on the Parties' Joint Motion for Briefing Schedule, Defendant Simply Southern Holdings, LLC ("Simply Southern") files this consolidated Motion to Dismiss with supporting brief and Opposition to Plaintiff's Motion for Entry of Consent Judgment and Permanent Injunction (ECF No. 12).

In the Parties' immediately prior and related case, on January 29, 2025 this Court **denied** the relief now sought by Plaintiff Codefine International SA ("Codefine"). Case No. 4:24-cv-00956-P, ECF No. 20 (the "January 29 Order"). This Court wrote *inter alia:* "But insofar as the Parties reached a meeting of the minds regarding an injunction, a Court order is a procedural technicality, not a rigid requirement." *Id.* There is no reason to grant it now. The early January sales activity in question had ceased prior to both the Parties' submission on January 29 and the Court's denial, and Simply Southern has no more of the products in question. Additionally, the Parties bargained in their settlement for what the each's obligations/remedies would be in the event of a breach, and those provisions have played out. Codefine is not entitled to more; nor can it force Simply Southern to be complicit in seeking to have this Court to do what the Court already denied. Res judicata applies.

This Court's January 29 Order further instructed: "If the Parties have subsequent disputes regarding enforcement of the settlement agreement or injunction, such disputes are sound in contract and are unrelated to the instant case." There have not been any new sales. Nor have there been any other alleged breaches, apart from Codefine's misguided amended claim that it is a breach for Simply Southern to refuse to consent a second time to the (already-denied) consent judgment.

1

Fundamentally, Codefine is unhappy that this Court denied the prior motion, and Codefine is trying again to get, through a different procedural vehicle, that which the Court rejected.

While Codefine claimed breach of contract on January 7 and now seeks the Court to order what Codefine claims was required by the contract, Codefine instead filed this case alleging not breach of contract, but patent infringement, no doubt trying to manufacture federal question subject matter jurisdiction where none exists. Codefine later added its breach of contract claim via its Amended Complaint, but subject matter jurisdiction remains lacking. Also, as a matter of law, the contract claim fails as Codefine misconstrues the language about what was and is required of Simply Southern. The Court previously rejected what Codefine now seeks, and there is no reason—new or old—for the Court to exercise its equitable powers to grant it.

As explained in more detail below, Codefine's motion should be denied, and Simply Southern hereby moves for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Simply Southern provides in the accompanying Appendix a declaration of its founder and Chief Executive Officer Virginia (Ginger) Aydogdu ("Aydogdu Decl.") in support of its opposition and Rule 12(b)(1) motion.

## **FACTS**

Codefine has brought this case after the resolution of all matters—twice—in and from a previous lawsuit, seeking a second bite of the proverbial apple. On October 8, 2024, Codefine sued Simply Southern for alleged infringement of U.S. Patent No. 12,053,071 (the "'071 Patent") due to Simply Southern's sales of certain rolling tote bags (the "Bags-At-Issue"). Case No. 4:24-cv-00956-P, ECF No. 1. From the beginning Codefine has sought, with a heavy hand, to make a mountain out of a molehill. As stated by its CEO Ginger Aydogdu, Simply Southern did not make

the Bags-At-Issue; it instead bought Bags-At-Issue between September 15, 2023 and February 27, 2024, months before the '017 Patent issued on August 6, 2024. Aydogdu Dec. ¶¶ 4–5 [Appx2]; ECF No. 11-1. Codefine did not contact Simply Southern prior to suing. Aydogdu Dec. ¶ 7 [Appx3].

Codefine and Simply Southern quickly entered into a Settlement Agreement dated November 26, 2024 (the "Settlement"). ECF No. 11-2. No payment was required by the Settlement, and Simply Southern agreed that it would neither challenge nor contest the validity of the '071 Patent. *Id.* at ¶¶ 2 & 11. Simply Southern agreed in the Settlement that it would "neither sell nor offer to sell any [of the Bags-At-Issue]" after December 31, 2024 (the "Phaze Out Date"). *Id.* at ¶ 3.c. The Settlement does not state that "time is of the essence" either in general or for the Phaze Out Date.

The Settlement recognizes that the Bags-At-Issue passing through Simply Southern's hands could—and would—still be sold by others in the marketplace. It provides: "it shall not be a violation of this Agreement when, and Codefine recognizes that, products wholesaled by Simply Southern before the Phaze Out Date are marketed and sold by third parties after the Phaze Out Date, and Codefine provides a release below with respect to such resellers." *Id.* at ¶ 3.c.

The Settlement provides that in the event of breach by Simply Southern, Simply Southern was obligated to agree to the entry of a specific consent judgment. *Id.* at ¶ 6 ("… agrees to the entry of a Consent Judgment in the form of Exhibit B."). The Settlement does not condition any releases or its validity upon any actions by the Court. The Settlement does not state that Simply Southern has additional obligations, or that resolved claims are revived, if the Court refused to enter the Consent Judgment the first time.

The Parties filed a Joint Stipulation of Dismissal without Prejudice, and the Court entered a Final Judgment. Case No. 4:24-cv-00956-P, ECF Nos. 16 & 18.

Consistent with the Settlement, Simply Southern neither ordered nor caused to be made any additional Bags-At-Issue, and its last wholesale sale of the Bags-At-Issue was on December 19, 2024. Aydogdu Decl. ¶ 10 [Appx3]. Ms. Aydogdu intended to instruct her company's 31 in-house stores, like the one in Fort Worth, to pull any remaining Bags-At-Issue that hadn't been sold by December 31, 2024. Aydogdu Decl. ¶ 11 [Appx3]. However, this communication was delayed a few days because of a family medical situation described in her Declaration. Aydogdu Decl. ¶ 12 [Appx4]. Upon realizing that the communication had not yet occurred, she began contacting her stores on January 6, 2025, directing them to pull any then-unsold Bags-At-Issue. Aydogdu Decl. ¶ 14 [Appx4].

After this was underway, on January 7, 2025 Codefine's counsel notified that there was an alleged breach and informed that a bag had been purchased from Simply Southern's Fort Worth store on January 1, 2025 by an intern working at Codefine's law firm. ECF No. 12-2 at 6 ¶ 1, 17 at ¶ 14, 22. Simply Southern then made sure that the pulling of the bags was completed at all of the stores; and no sales occurred after January 9, 2025. Aydogdu Decl. ¶ 17 [Appx4]. Since the Settlement prohibited sales and offers to sell but did not prohibit donations, Simply Southern donated its remaining Bags-At-Issue to various schools. Aydogdu Decl. ¶ 18 [Appx4]. Simply Southern has no more of the Bags-At-Issue. Aydogdu Decl. ¶ 23 [Appx6].

Simply Southern explained the cause of the delay to Codefine and objected to the submission of a consent judgment. *See* ECF No. 12-2 at 50, 54 ("Thank you for the call and the explanation"). It did not seem necessary in light of the reason for the delay, that Simply Southern had substantially complied, and that the issue could not be repeated. There was also a concern that

4

Codefine would misuse the possible Consent Judgment to try to stifle retail sales by prior wholesale customers, despite the language in the Settlement permitting such re-sales.

The Parties then reached a further accord and fresh resolution of all open issues concerning the January activities (the "Accord"). *See* ECF No. 12-2 at 104, 119-124, 126-129, 132-137. The proposed Consent Judgment was revised over Codefine's reluctance, see ECF No. 12-2 at 70 ("No, Codefine would prefer …"), and Simply Southern agreed to the wording of the Joint Motion and the revised proposed Consent Judgment that memorialized the agreed bar on subsequent sales by Simply Southern of the Bags-At-Issue. *See* ECF No. 12-2 at 104, 119-124, 126-129, 132-137. Having received the contractually-bargained for consequence for the alleged breach, Codefine elected to file and filed the joint motion on January 29, 2025. Case No. 4:24-cv-00956-P, ECF No. 19. Those actions resolved all claims by Codefine about Simply Southern's actions in January before the January 29, 2025 motion, as the motion stated, among other things "… the parties agree to bear their own costs and attorneys' fees…." *Id.* at 3. Codefine did not reserve the right to revive and assert claims (either for 2024 sales or for the January 1 to 9, 2025 sales) in the event this Court did not do what Codefine wanted.

This Court considered the matter and denied the motion. Case No. 4:24-cv-00956-P, ECF No. 20. The January 29 Order states: "Accordingly, acting upon the Parties' representation that this case has been settled, and that they agree to the permanent injunction, the Court **DENIES** the Joint Motion." *Id.* In observance that Simply Southern agreed via the January 29 filing that it would not sell the Bags-At-Issue, the Court wrote: "But insofar as the Parties reached a meeting of the minds regarding an injunction, a Court order is a procedural technicality, not a rigid requirement." *Id.* The Court further instructed: "If the Parties have subsequent disputes regarding enforcement

5

of the settlement agreement or injunction, such disputes are sound in contract and are unrelated to the instant case." *Id.*[1]

There have not been subsequent disputes regarding the enforcement of the settlement agreement or injunction because there have not been new sales since January 29. Aydogdu Decl. ¶ 21 [Appx5]. Rather, dissatisfied with the Court's January 29 Order, Codefine continues to try to get what the Court denied on January 29, 2025. Codefine did not, however, appeal the Court's January 29 Order.

On February 11, 2025, without any new sales after January 29, 2025 (or even after January 9, 2025), Codefine filed this case alleging only patent infringement (Count I). Simply Southern waived service of the summons, at Codefine's request, giving Simply Southern, under Rule 4(d), until April 14, 2025 to respond.

Codefine also sought that Simply Southern consent for a second time to the previously Court-denied Consent Judgment. *See, e.g.*, ECF No. 12-2 at 154, 177, 239-241. Simply Southern refused for a host of reasons including the Court's prior denial, the Court's directions to the Parties in its January 29 Order instructing that a court order was unnecessary and that the matter was resolved unless there was a new violation, a lack of subject matter jurisdiction, that the matter had been previously resolved and was moot, that no additional sales had occurred and thus a new matter was not ripe, the lack of any bags and thus that an order was unnecessary, and that what Codefine requested of Simply Southern was a 'second' consent not required by the Parties' agreement. ECF No. 12-2 at 178, 196-97, 238.

---

[1] Codefine does not provide this full quotation in its Motion. Codefine instead misquotes and mischaracterizes it—twice. *See infra* p. 11.

Codefine filed on March 7, 2025 an Amended Complaint (ECF No. 11) adding a breach of contract claim (Count II). Its claim asserts that the January sales constituted a breach, notwithstanding the January 29 Accord and court filings. Codefine also misconstrues the contract language and alleges breach from Simply Southern's refusal to agree a second time to a consent judgment despite the Court's prior denial of it. Without waiting for any response, and on the same day, Codefine filed its Motion for Entry of Consent Judgment and Permanent Injunction. ECF No. 12.

Codefine neglected to serve either its Motion or the Amended Complaint to Simply Southern for a week. The Parties agreed to a briefing schedule, which was then ordered by the Court. *See* ECF Nos. 14, 15.

## ARGUMENT

Codefine's conduct in bringing the present suit seeks to rewrite history, reverse the Court's prior January 29 Order, and drum up remedies not available to it under the original Settlement and subsequent Accord. Codefine claimed in January that Simply Southern breached the Parties' settlement by sales from January 1 to 9, 2025. Per the Settlement's contractually designated remedy in its Section 6, Simply Southern agreed to the entry of a consent judgment (amended as agreed), plus the joint motion, reaffirming the bar on subsequent sales by Simply Southern. It is undisputed that Simply Southern has not been in subsequent breach. Codefine now seeks additional remedies in a resolved matter, despite Simply Southern performing its obligations under Section 6 of the Settlement and the subsequent Accord. *See Isler v. Texas Oil & Gas Corp.*, 749 F.2d 22, 23 (10th Cir. 1984) (dismissing tort claim when the parties had contracted for their defined rights and duties, stating "The very notion of contract is the consensual formation of relationships with bargained-for duties."); *see generally Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538

(5th Cir. 2003) ("It is a widely accepted principle of contracts that one who signs or accepts a written instrument will normally be bound in accordance with its terms." (internal citation omitted). Here, without subject matter jurisdiction, Codefine inappropriately seeks more than what was bargained for between the Parties, and to reverse this Court's prior decision.

## I.    **Legal Standards**

Codefine's motion does not identify under what Rule it was filed, other than a general reference to Rule 1 and inapposite cases about settlements. As Codefine's motion seeks entry of judgment, it appears to be a motion for summary judgment, filed on the same day as the Amended Complaint, before both the Answer and any Rule 12 motions. The Court should deny it as a matter of law because Codefine is not legally entitled to entry of judgment. The relief requested—a permanent injunction—should be denied also on equitable principles.

When resolving Codefine's motion, the Court is not limited to reviewing only the Amended Complaint, but instead may consider other evidence, such as the Aydogdu Declaration (accompanying Appx1-Appx6).

On the Rule 12(b)(1) motion, there is likewise no presumption of truthfulness attached to Codefine's allegations in the Amended Complaint, and the Court is entitled to consider additional evidence, and even resolve disputed facts, in order to determine whether it has subject matter jurisdiction. *See Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981). The consideration of materials beyond the operative complaint does not convert a Rule 12(b)(1) motion into a Rule 56 motion, as "[a] Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction cannot be converted into a motion for summary judgment." *Green v. Forney Engineering Co.*, 589 F.2d 243, 246 (5th Cir. 1979).

The Rule 12(b)(6) portion of Simply Southern's motion is reviewed per the familiar standard:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. In reviewing a motion to dismiss, [the court] accepts all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff. But a complaint's allegations must make relief plausible, not merely conceivable, when taken as true. The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint.

*Allen v. Vertafore, Inc.,* 28 F.4th 613, 615-16 (5th Cir. 2022) (quotations and citations omitted, and cleaned up). "In ruling on a Rule 12(b)(6) motion, "it is clearly proper in deciding a 12(b)(6) motion to take judicial notice of matters of public record" and a court may also consider items of unquestioned authenticity that are referred to in the challenged pleading and are 'central' or 'integral' to the pleader's claim for relief." *Cerkezi v. City of Arlington*, No. 4:23-cv-00991-P, 2024 WL 265873, 2 (N.D. Tex. Jan. 24, 2024) (internal citations omitted); *see also Judy Chou Chiung-Yu Wang v. Prudential Ins. Co. of America*, 439 Fed. Appx. 359, 363 (5th Cir. 2011) ("[i]n deciding a 12(b)(6) motion to dismiss, a court may permissibly refer to matters of public record. Thus, the district court did not impermissibly consider documents outside of the record in deciding the motion to dismiss, as the documents referred to were public court filings") (internal citation omitted).

Moreover, it is appropriate for the Court to consider the defense of res judicata when the pleadings show that there is no set of facts that would overcome the defense and entitle the plaintiff to relief. *Bell v. Mountain Saginaw Indep. Sch. Dist.*, 27 F.4th 313, 320 (5th Cir. 2022). Res judicata appears on the face of the pleadings when the complaint refers to the prior litigation and may be considered at the motion to dismiss stage. *Stevens v. St. Tammany Par. Gov't*, 17 F.4th 563, 571 (5th Cir. 2021).

Accordingly, when considering Codefine's Motion, the Rule 12 motions, the Court may and should take judicial notice of the court filings, Judgment and its January 29 Order in the prior Case No. 4:24-cv-00956-P. Ms. Aydogdu's Declaration and anything else not properly the subject of judicial notice should not be considered when resolving the Rule 12(b)(6) motion.

II.    **Codefine's Motion and Claims are Barred by Res Judicata.**

"Under res judicata, a final judgment on the merits of an action precludes that Parties or their privies from relitigating issues that were or could have been raised in that action," and "prevents a later suit, such as this one, from collaterally attacking a prior judgment by a court of competent jurisdiction." *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (internal citation omitted). For a claim to be barred by res judicata, four elements much be met: "(1) the parties much be identical in the two actions; (2) the prior judgment must have been rendered by a court of competent jurisdiction; (3) there must be a final judgment on the merits; and (4) the same claim or cause of action must be involved in both cases." *Id.* In this case, all four elements of res judicata are satisfied.

As to the first prong, the two actions involve identical parties: Codefine and Simply Southern. *See* ECF No. 11 & Case No. 4:24-cv-00956-P, ECF Nos. 1, 18 & 20.

As to the second prong, the United States District Court for the Northern District of Texas had competent jurisdiction over Codefine's patent infringement case, which concerned federal patent law. 28 U.S.C. §§ 1331, 1338; *see Gunn v. Minton*, 568 U.S. 251, 257 (2013) ("Minton's original patent infringement suit … arose under federal law….").

As to the third prong, the January 29 Order entered in the prior action constitutes a final judgment on the merits. "A final judgment for the purposes of res judicata must finally dispose of some matter which under the substantive law to be applied and the procedural law of the forum

can be, and has been, finally disposed of." *In re Vitro Asset Corp.*, 539 B.R. 108, 121 (N.D. Tex. 2015). There was nothing further to be litigated or done after the January 29 Order in Case No. 4:24-cv-00956-P.

As to the fourth prong, the same claim or cause of action is present in both cases. In fact, the January 29 Order contemplates this very issue, holding "[i]f the parties have *subsequent* disputes regarding enforcement of the settlement agreement or injunction, such disputes are sound in contract and are *unrelated to the present case*." Case No. 4:24-cv-00956-P, ECF No. 20 (emphasis added).

Codefine ignored this instruction and attempted instead to revive the *previous* dispute in a new case, seeking entry of the exact same proposed judgment. Codefine misquotes the Court's January 29 Order, writing in its motion, "…the Court indicated that Codefine should file a new case with respect to any 'subsequent disputes' arising *after the previous case was closed*." ECF No. 12 at 1, 7 (emphasis added). That is not what the January 29 Order says. The January 29 Order never includes the phrase "arising after the previous case." Nor is that a fair reading of the January 29 Order. The plain language of the January 29 Order instead concerns activities after January 29. Indeed, when the case previously settled in November, the Parties did not inform the Court of settlement terms (other than dismissal). It was only through the January 29 filings of the joint motion and proposed judgment that the Court was informed of the Parties' meeting of the minds regarding the injunction expressly discussed in the misquoted sentence as well as the two sentences flanking it.

Codefine's mis-framing of the January 29 Order thus attempts to conflate activities arising after the previous case with any arising after January 29. This is particularly relevant in the context of res judicata because it is undisputed that there has not been any misconduct past January 29 (or,

11

actually January 9) and, thus, no continuing behavior. "A substantially single course of activity may continue through the life of a first suit and beyond. The basic claim-preclusion result is clear: a new claim or cause of action is created *as the conduct continues*." 18 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 4409, at 227 (3d ed. 2008) (emphasis added). Here, no conduct has continued and the only activities that Codefine has cited are the same causes of actions disposed of by the January 29 Order. As such, the fourth prong is satisfied.

Accordingly, Codefine's motion should be denied and the claims dismissed under Rule 12(b)(6).

III.    <u>**Subject Matter Jurisdiction is Lacking and This Case Should be Dismissed.**</u>

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction, so the plaintiff constantly bears the burden of proof the jurisdiction does in fact exist." *Shemwell v. City of McKinney, Texas*, 63 F.4th 480, 483 (5th Cir. 2023) (quoting *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)) (internal quotation marks omitted). Codefine asserts federal question jurisdiction solely from its patent claim, ECF No. 1-2 (cover sheet) & ECF No. 11 (Am. Compl.) at ¶¶ 1 & 11, about Simply Southern's sales of Bags-At-Issue in 2025.

However, there is no valid patent claim. This is seen at least two ways.

A.    *The January 29 Order Indicates that Patent Claims Were Resolved.*

First, the Court's January 29 Order indicates that, in light of the Parties' January 29 Joint Motion filing the Court considered, the matter was resolved and thus moot. *See generally Brinsdon v. McAllen Independent School District*, 863 F.3d 338, 345 (5th Cir. 2017) ("A claim is moot when a case or controversy no longer exists between the parties."). The Court's January 29 Order emphasized that future potential claims about subsequent actions "are sound in contract." Thus, claims of patent infringement from before December 4, 2024 had been resolved by the December,

4 2024 Final Judgment; and patent claims (based on actions in January) prior to the Joint Motion were also resolved. *See* Case No. 4:24-cv-00956-P, ECF Nos. 18 & 20. Further, compelling grounds do not exist to support any live, ongoing issues. Simply Southern does not possess any remaining stock of the Bags-At-Issue.

Since then, it is undisputed that there have not been any further sales; indeed, there have been none since January 9. Accordingly, hypothetical claims about hypothetical future sales do not exist and are not yet ripe. There is no *subsequent* dispute, as called for by the January 29 Order, but only an attempt to revisit the previous dispute resolved by the Accord. "A court should dismiss a case for lack of 'ripeness' when the case is abstract of hypothetical." *Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (internal citation omitted). In the present case, Codefine would have needed to show a fresh instance of patent infringement after the January 29, 2025 agreement and Order. But no such breach has been alleged. As such, Codefine's patent claim fails for lack of jurisdiction under Rule 12(b)(1).

### B.    *The Parties Reached an Accord, Resolving the Patent Claims.*

Second, the Parties' Settlement and subsequent Accord demonstrates that are no unresolved patent claims for the Court now to consider. Accordingly, there is no basis for subject matter jurisdiction.

This Court in *Hicks v. Transamerica Life Ins. Co.* explains that a "valid accord and satisfaction requires an unmistakable communication establishing that performance according to the terms of the new agreement will satisfy the underlying obligation created by the initial contract" and that there was "initially… a legitimate dispute between the parties about what was expected." No. 3:24-cv-00520-G, 2024 WL 1312500, at 3 (N.D. Tex. Mar. 19, 2024) (internal citations omitted). Both are present here.

13

The Parties' email exchange regarding the entry of the consent judgment supports this outcome. *See* ECF No. 12-2 at 17-18, 105 (Rich Decl. ¶¶ 14-18 & Ex. D at 2). Following the claimed initial breach, Simply Southern resisted the entry of the consent order. There was a dispute about whether Simply Southern had breached, and thus whether Section 6's remedy had been triggered.

This dispute was resolved by the Accord. Simply Southern provided Codefine the bargained-for remedy by consenting on January 29 to the joint motion and consent judgment (modified by agreement), which demonstrated agreement to the bar of further sales of Bags-At-Issue and resolution of all issues then pending. Codefine made the filing it wanted on January 29.

Thus, a valid accord and satisfaction exists here, and all claims about the early January sales were resolved. The joint motion did not assert any entitlement by Codefine to additional claims for money or other relief; it instead stated that each party bore its own fees and costs. Case No. 4:24-cv-00956-P, ECF No. 19 at 3, ¶ 12. It also reflected the parties' on-going agreement to the *de facto* injunction—that Simply Southern agreed not to sell Bags-At-Issue. *Id.* ¶ 10. There are no remedies left for the 'theoretical' patent or contract claims about the early January sales. Put another way, Codefine contracted in the Settlement for a specific consequence in the event Simply Southern breached, and then Simply Southern provided that consequence to Codefine in the form of Simply Southern's agreement, after a valid dispute, to the January 29 joint motion and consent judgment (modified, as agreed by the Parties). Codefine received this performance willingly. Codefine even filed the Joint Motion. Case No. 4:24-cv-00956-P at 19. Codefine also continues to receive the benefit of Simply Southern's non-sales of the Bags-At-Issue. Codefine's current Count I now improperly attempts to revive the resolved patent claim.

Plaintiff's Motion for Entry of Consent Judgement and Permanent Injunction is now unnecessary. The Court confirmed this in its January 29 Order. Case No. 4:24-cv-00956-P, ECF No. 20 ("But insofar as the Parties reached a meeting of the minds regrading an injunction, a Court order is a procedural technicality, not a rigid requirement."). Without a subsequent dispute, a court order is merely a procedural technicality that the Court found to be needless in this case. *See* Case No. 4:24-cv-00956-P, ECF No. 20. No fresh breach or sales of Bags-At-Issue have occurred since the January 29 Order. Codefine's present endeavor to obtain a court order is gratuitous and oversteps the four corners of the Settlement and subsequent Accord.

With respect to whether there was a valid dispute that was the subject of the Accord, the following is noted. While Simply Southern agreed to the Accord giving Codefine its contractually bargained-for remedy (with an agreed-upon modification) in the event of Simply Southern's breach, Simply Southern disputed whether it was actually a breach. It probably was not, because the Settlement did not contain a "time is of the essence" provision. Under Texas law, "time is not of the essence of a contract unless the contract explicitly makes it so or the contract is of such a nature that it indicates the parties' intention that they must perform the contract at or within the time specified." *Childers v. Pumping Systems, Inc.*, 968 F.2d 565, 568 (5th Cir. 1992). Here, Simply Southern inadvertently delayed stopping in-store sales until between January 6 and 9, 2025, and it recognized the issue and began stopping before hearing about it from Codefine. The Settlement's establishment of a Phaze Out Date itself is not conclusive evidence that time is of the essence: "Texas courts hold the designation of a particular date for performance does not, of itself, indicate time is of the essence. […] Consequently, the [one day] delay in payment did not materially breach the agreement." *Id.* Similarly, Simply Southern's delay did not amount to more

than immaterial and unintentional breach. The immateriality of it was confirmed by the fact that no payment was required under Section 6 or by Codefine as part of the Accord.

In any event, Simply Southern has not been in breach, material or immaterial, after January 9, and Codefine does not make any allegations to this effect. Codefine should not be permitted to pursue a claim against Simply Southern in the absence of an unresolved patent claim and when it continues to reap the benefits of the Settlement and the Accord. Simply Southern pulled all the Bags-At-Issue, no longer has them, and agreed—as noted by the Court—to the injunction prohibiting it from offering or selling Bags-At-Issue.

\* \* \*

Without the patent claim, there is nothing to support federal subject-matter jurisdiction for the remaining contract claim. Codefine does not claim that the breach of contract claim presents a federal question or that there is any other basis for jurisdiction in this federal court. For example, Codefine makes no allegations supporting possible diversity jurisdiction, including no allegations, for example, that the diversity dollar threshold has been exceeded.

The only other potential argument Codefine might make for jurisdiction concerns Section 6 of Settlement. ECF No. 11 ¶ 36 and 11-2 at 4. In Section 6, Simply Southern agreed to <u>personal jurisdiction</u> and venue in this Court, but the Settlement is silent about subject matter jurisdiction. That is not surprising, as it is well established that "[p]arties may neither confer subject matter jurisdiction on the district court nor strip it of such jurisdiction by agreement or waiver." *Ballew v. Cont'l Airlines, Inc.,* 668 F.3d 777, 786 (5th Cir. 2012).

Additionally, even if the patent claim were to survive, raising the contract claim in federal court is still inappropriate. "[A] district court does not have the inherent power to enforce the terms of a settlement agreement under the doctrine of ancillary jurisdiction." *Harjo v. Citizenship and*

*Immigration Services*, 811 F.3d 1086, 1099 (9th Cir. 2016); *see also Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378 (1994) ("Enforcement of the settlement agreement, however, whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction."). Codefine has failed to plead any facts that would support federal subject-matter jurisdiction over the contract claim and, thus, this claim too should be dismissed

IV.    **Codefine Misconstrues the Settlement**.

Codefine's Breach of Contract Claim and its Motion hinge upon a misconstruction of the Settlement. Accordingly, the Motion should be denied and the Claim dismissed. Codefine misreads Section 6.

Section 6 of the Settlement states, "[i]n the event that Simply Southern breaches Section 3 above, then Simply Southern agrees to the entry of a Consent Judgment in the form of Exhibit B." ECF No. 11-2 at ¶ 6.[2] Simply Southern's obligation under Section 6 was *to agree to*, not *to enter*, the consent judgment. It does not condition the Settlement upon entry by the Court of such a Judgment. It did not undo or void the dismissal or releases if the Judgment were not entered. It does not state that Codefine is entitled to additional remedies or to revive the claims if the Court chose not to enter judgment, although Codefine and its counsel surely realized that when asking the Court to exercise its equitable powers to enter a permanent injunction, the Court could deny the motion. Nor did it require Simply Southern to agree more than once. Indeed, Simply Southern does not possess the authority to enter a consent judgment and therefore all it could do was to "agree[]" to the entry at the time.

---

[2] Furthermore, an event of breach does not dispense with the Settlement's release, as "one party's nonperformance does not 'void' a contract." *Schweiger v. USAA Fed. Sav. Bank*, No. SA-17-CV-00660-OLG, 2017 WL 6503660, at 4 (W.D. Tex. Dec. 18, 2017).

Codefine's emphasis on entry itself—"Codefine requests the Court enter the proposed Consent Judgment and Permanent Injunction in light of Simply Southern's agreement to **entry** of a Consent Judgment as a remedy for its breach of the parties' settlement agreement" (emphasis in original)—is resultingly misguided. ECF No. 12 at 15. The terms of the contract are clear: a breach of the Settlement triggers an obligation on the part of Simply Southern to *agree*.

Simply Southern did just that. Without conceding that its delayed compliance in early January was a breach, on January 29, 2025, Simply Southern communicated its consent to the entry of the consent judgment, revised by agreement. ECF No. 12-2 at 104 (Rich Decl. Ex. D at 1). Codefine does not dispute this fact. It repeatedly confirms it. *See* ECF No. 12 at 13 ("Simply Southern's infringement and breach of the settlement agreement merit entry of the Consent Judgement that Simply Southern previously agreed to"); ECF No. 12-2 at 18, 104 (Rich Decl. ¶ 18 & Ex. D at 1). This means that Simply Southern performed all of its then-present obligations under Section 6 of the Settlement.

Put another way, the Settlement sets forth the Parties' bargained-for consequence if there was a breach. *See Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 538 (5th Cir. 2003). Codefine then received it —namely, Simply Southern's agreement to the then-proposed Consent Judgment, with the modification agreed to by the Parties.

The January 29 Order's denial of the motion did not impose, via terms of the Settlement, a new obligation on the Parties. The Settlement does not contain, for example, a conditional provision that requires Simply Southern to renew its agreement in the event that a joint motion for judgment were denied. Moreover, a conditional obligation to this effect cannot be added to the Settlement as that Parties agree that they "intend [the Settlement] to be a fully integrated contract." ECF No. 11-2 at ¶ 9.

As such, Simply Southern's obligation from Section 6 was satisfied. The Settlement does not call for continued agreement, or a second or a third agreement, to a consent judgment. In other words, at best for Codefine, for the alleged early January breach of the Settlement, a discrete obligation of agreement arose. The consequences of the alternative illustrate this point: if the court never enters the proposed consent judgment, as it clearly has discretion to do, would Simply Southern be bound to keep agreeing and the Parties making nettlesome filings with the Court, in perpetuity? Such an outcome would be ineffective and inefficient, and could not possibly be the obligation contemplated by the contract.

Bedrock law of contract interpretation supports Simply Southern's position. "To determine intent, we look to the plain language of the contract, its commercial context, and its purposes." *Reliant Energy Services, Inc. v. Enron Canada Corp.*, 349 F.3d 816, 822 (5th Cir. 2003). Here, the language of the contract is not ambiguous. It calls only for agreement, which Simply Southern provided.

## V.    Codefine's Motion Should be Denied on Equitable Principles.

Codefine's motion also fails to set forth sufficient grounds in equity to support an injunction. To obtain a permanent injunction, a party must show "(1) that it has suffered an irreparable injury, (2) monetary damages are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006); *see also Carpenter v. Twin City Fire Ins. Co.*, No. 3:23-CV-0769-N, 2024 WL 455342, 3 (N.D. Tex. Feb. 2, 2024) (denying a request for a permanent injunction where plaintiff did not and could not show that he would suffer an irreparable injury if his requested relief was not granted). In this case, equitable relief is not

necessary because there is no likelihood of repetition and no ongoing harm to Codefine that can be compensated only by injunction.

Codefine asserts that it suffered "irreparable harm" as a result of direct competition. However, this is moot. Simply Southern has complied with its obligations under the Settlement and properly disposed of all of the Bags-At-Issue that remained after being pulled from shelves. Aydogdu Decl. ¶ 18 [Appx4]. Codefine will not suffer lost profits, the loss of brand name recognition, or the loss of market share—"the type of injuries that are often incalculable and irreparable"—as a result of Simply Southern's conduct. *z4 Technologies, Inc. v. Microsoft Corp.*, 434 F.Supp.2d 437, 440 (E.D. Tex. 2006).

In fact, Codefine has explicitly authorized downstream retailers to continue selling the Bags-at-Issue, but offers no explanation as to how Simply Southern's inadvertent, week-long sales constitutes a kind of irreparable harm distinguishable from that of third-parties permitted to sell the same product. When it is considered that the Settlement allowed both a phaze out period and also post-phaze out period resale by retailers who had bought at wholesale, it is doubly clear that there is no irreparable harm to Codefine. Codefine already agreed that such downstream retailers could sell—without any time limits—and gave a release to for those retailers selling the Bags-At-Issue received from Simply Southern. Thus, Codefine has agreed that "marketplace" possess and may transact sales for such bags, without any monetary compensation to Codefine. The only Bags-At-Issue on the currently-asserted claims and motion were those sold by Simply Southern after January 1, but those are all out of Simply Southern's possession. This demonstrates the lack of 'irreparable harm.'

Moreover, there is no reason to believe that monetary damages are inadequate to compensate for any injury to Codefine. While Codefine cites its patent's right to exclude, "a

violation of the right to exclude does not inevitable lead to the conclusion that a patent holder cannot be adequately compensated by remedies at law such as monetary damages without first applying the principles of equity." *Id*. The court in *z4 Technologies* contemplated a case in which the defendant needed two to three years to phase infringing products out of its product line and found that "calculating the appropriate royalty rate for any future infringement based on the sale of the older… products should not be too indefinite or difficult." *Id*. at 442. The present case is even simpler: the January sales took place for no more than 9 days. Aydogdu Decl. ¶ 17 [Appx4]. Simply Southern then promptly donated all remaining Bags-at-Issue, and so there no reasonable grounds to believe they could now be sold by Simply Southern. As such, legal remedies would not be insufficient in this case.

When it is considered that the Settlement allowed both a phase out period and also post-phaze out period resale by retailers who had bought at wholesale—all without payment to Codefine, it is doubly clear that there has been no irreparable harm to Codefine. It already agreed that such retailers could sell—without any time limits. The only Bags-At-Issue on the claims are those sold by Simply Southern after January 1—and those are all gone.

Codefine's motion addresses intentionality of conduct. This is not, however, a case of the predatory infringer. Simply Southern bought all of its inventory of the products months before the patent issued. It reached agreement to resolve the matter quickly. It strove to comply with the Phaze Out Date, ending all wholesale sales well before the end of 2024, even though time was not stated to be of the essence for that date. Then, it was a family medical issue that resulted in a delay in compliance. Ms. Aydogdu realized that she had delayed to contact the stores on January 6 and started the process of compliance with the in-store sales cessation, even before Codefine notified of the problem. Bags-At-Issue were pulled and then donated, illustrating further that it was not the

case the Simply Southern was trying to sell in a predatory fashion. It was a simple mistake that caused the delay and may not have been a material breach at all. Even so, Simply Southern then provided Codefine the contractually bargained-for remedy of Simply Southern agreeing to the consent judgment (with an agreed revision) and otherwise reached the Accord resolving all issues as of January 29. There was no bad intent by Simply Southern here necessitating a permanent injunction or other remedies.

Finally, the balance of hardships does not weigh in favor of Codefine. There is no continued infringement to enjoin, and Codefine remains protected by the Settlement. Were there to be an instance of *fresh* breach, the repetition of which Codefine has not shown to be reasonably likely, Simply Southern would be subject to a new obligation to agree to the entry of a consent judgment. However, none of these conditions have been satisfied. Instead, Codefine attempts to jump the gun and obtain equitable relief which is unnecessary because Codefine does not suffer any ongoing hardship as a result of Simply Southern's conduct. A permanent injunction should not be issued.

## <u>CONCLUSION</u>

For the reasons set forth above, Codefine's Motion should be denied, and also the case dismissed pursuant to one or both Rules 12(b)(1) and (6).

April 11, 2025                                          Respectfully submitted,

                                                        /s/ *Gregory M. Sudbury*
                                                        Gregory M. Sudbury
                                                        Texas Bar No. 24033367
                                                        **QUILLING, SELANDER, LOWNDS,**
                                                        **WINSLETT & MOSER, P.C.**
                                                        2001 Bryan St., Suite 1800
                                                        Dallas, Texas 75201
                                                        Telephone: (214) 871-2100
                                                        Facsimile: (214) 871-2111
                                                        gsudbury@qslwm.com

                                                        -and-

/s/ *David W. Sar*
David W. Sar[*]
N.C. State Bar No. 23533
dsar@brookspierce.com
**BROOKS, PIERCE, MCLENDON,**
 **HUMPHREY & LEONARD, L.L.P.**
Post Office Box 26000
Greensboro, NC 27420-6000
Telephone:    (336) 271-3175
Facsimile:    (336) 232-9075

*Attorneys for Defendant Simply Southern Holdings, LLC*

[*]*Admitted pro hac vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 11, 2025, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the CM/ECF participants registered to receive service in this case.

/s/ *David W. Sar*